FLOYD BAILEY, JR. v. STATE OF ARKANSAS

5-5400                                    438 S.W. 2d 321

Opinion Delivered March 17, 1969

*Harold L. Hall* for appellant.

*Joe Purcell,* Atty. Gen. and *Don Langston,* Asst. Atty. Gen. for appellant.

LYLE BROWN, Justice. Floyd Bailey, Jr. was convicted of illegally possessing narcotics. Court-appointed counsel was relieved after the trial and appellant, Bailey, went to the penitentiary. The time ordinarily allowed for appeal expired; however, the trial court granted Bailey a belated appeal because he did not have the assistance of counsel to represent him and timely file the appeal. Bailey challenges the validity of a search of his apartment and of his person, both of which revealed the presence of marijuana. The pertinent facts will be related under our discussion of Bailey's two points for reversal.

POINT I. *The court erred in admitting evidence obtained by affidavit and search warrant issued upon insufficient facts and information in violation of the constitutional rights of the defendant.* The two arguments under this point are (1) that the affidavit for search warrant was signed by Officers Terry and Gibson, who did not appear before the magistrate; and (2) that the affidavit provides only the unsupported conclusions of the affiants. In other words, appellant says the affidavit does not present the underlying facts or circumstances so that the examining magistrate could have made an independent determination as to the existence of probable cause. It is therefore argued that evidence obtained at defendant's home was inadmissible.

With respect to the execution of the affidavit for search warrant, here is what the record reveals: Officers Terry and Gibson obtained from a source not disclosed a printed form used by the Municipal Court of Little

Rock and titled "Affidavit for Search Warrant." The body of the affidavit is as follows: "I, John Terry and W. D. Gibson, LRPD, do solemnly swear that illegal narcotics, marijuana, and drugs, are concealed in the premises occupied by Floyd "Spike" Bailey at 1003 High Street, Apt. 14, LR., in the State and County aforesaid, and pray a warrant from said court to search said premises." The two officers signed the instrument. The jurat to the affidavit reads: "Sworn to and subscribed before this 27 day of May, 1966. _____, Clerk." The jurat is not executed by any official. The Clerk of the Municipal Court, Criminal Division, testified that he took no part in the execution of the affidavit.

We examine the search warrant issued on the basis of the proposed affidavit. The warrant recites that "complaint has been made, on oath, before the clerk or judge of the Municipal Court of Little Rock, by John Terry and W. D. Gibson, LRPD, that certain illegal narcotics, marijuana, and drugs are concealed on the premises occupied by Floyd "Spike" Bailey at 1003 High Street, Little Rock, and whereas, being satisfied that there is reasonable ground for such suspicion, you are therefore hereby commanded to search the said place above mentioned..." It will be noted that the search warrant issued by Judge Sullivan stated that it was issued on information supplied by Officers Terry and Gibson. It was undisputed that these officers did not appear before the magistrate. Officer Baer said he obtained the search warrant for Officers Gibson and Terry. There is but one conclusion to be reached from the testimony. Officers Terry and Gibson executed a form of affidavit for a search warrant and asked Detective Baer to present the document to Judge Sullivan and obtain a search warrant.

The affidavit for a search warrant is void on its face. The Constitution of Arkansas, Art. 2, § 15, requires the search warrant to be supported by oath or affirmation. The affidavit shows that the officers who

executed the document did not appear before any officer authorized to take such an acknowledgment. The proof shows that the subscribing officers sent a third party, Detective Baer, to obtain the warrant. The purported affidavit, which is the sole evidence of probable cause afforded the magistrate, is defective in that it states a mere conclusion. A magistrate is not permitted to accept a complainant's conclusions without question. *Walton and Fuller* v. *State,* 245 Ark. 84, 431 S.W. 2d 462 (1968); *Giordenello* v. *United States,* 357 U.S. 480 (1958). Mr. Justice White's concurring opinion in *Spinelli* v. *United States,* 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969), analyzes *Giordenello* and six other cases on the question of prerequisites for issuance of a search warrant. If an officer swears there is contraband at a particular address there are three possibilities for the basis of his conclusion:

(1) The officer has seen the illegal object or objects. In that event his affidavit should assert personal observation; or,

(2) The officer "observed or perceived facts from which the presence of the equipment may reasonably be inferred. In that event the affidavit must recite the perceived facts so that the magistrate may judge the existence of probable cause"; or,

(3) The officer has obtained the information from someone else, for example, an informer. In that event the warrant should not issue unless good cause is shown in the affidavit (or supporting testimony) for crediting that hearsay.

There are a multitude of cases from the United States Supreme Court, in addition to those cited by Mr. Justice White, which detail the manner in which the requirements under alternatives (2) and (3) must be met.

POINT II. *The court erred in admitting in evidence the marijuana obtained from the defendant's person.* The officers first went to Bailey's apartment to conduct a search. Bailey was not at home and they decided to find him before searching. One of the officers knew that Bailey might be found in the vicinity of Wright Avenue and High Street. He was there located and the officers took him into custody for the purpose of taking him to the apartment. They had no warrant for his arrest, nor did they have a search warrant for his person. Prior to placing Bailey in the patrol car the officers searched him, assertedly for weapons. Officer Hunter took the suspect's billfold from his pocket and handed it to Officer Terry. In the course of the wallet being passed between the officers a tightly rolled cigarette dropped therefrom. The billfold was then inspected and three small brown envelopes were found. The cigarette and the envelopes contained marijuana.

Ark. Stat. Ann. § 43-403 (Repl. 1964) authorizes an arrest by an officer in obedience to a warrant of arrest, and without a warrant if a public offense is committed in his presence, or if the officer has reasonable grounds for believing that the person has committed a felony. We view the search in light of the particular purpose for which the officers testified they made it. First, they did not say they arrested the defendant because they had reasonable grounds to believe he had committed a felony. Specifically, the officers explained that they wanted to take him back with them to the apartment, ostensibly to have him present when the search was made. Officer Hunter explained the purpose of the search thusly:

Q. Why did you shake him down there?

A. Well, I knew the man and I knew that he was subject to carrying a weapon and, inasmuch as we would be going to carry him back to his apartment, well, I searched him.

Under the recited circumstances we conclude the defendant was not legally under arrest; therefore the search was not incidental to a lawful arrest. However, we recognize there are circumstances under which a suspect may be checked for weapons. If we here concede, without deciding, that the officers had a right under the circumstances to check Bailey (as a suspected felon) for weapons, yet we must ascertain whether that search was "reasonably limited in scope to the accomplishment of the only goal which might conceivably have justified its inception—the protection of the officer by disarming a potentially dangerous man." *Sibron* v. *New York*, 392 U.S. 40 (1968). On the same date *Sibron* was handed down, the Court decided another search for weapons case, the latter being *Terry* v. *Ohio*, 392 U.S. 1 (1968). The searches of Sibron and Terry were compared in *Sibron* and the Court had this to say:

> The search for weapons approved in *Terry* consisted solely of a limited patting of the outer clothing of the suspect for concealed objects which might be used as instruments of assault. Only when he discovered such objects did the officer in *Terry* place his hands in the pockets of the men he searched. In this case, with no attempt at an initial limited exploration for arms, Patrolman Martin thrust his hand into Sibron's pocket and took from him envelopes of heroin ... Such a search violates the guarantee of the Fourth amendment, which protects the sanctity of the person against unreasonable intrusions on the part of all government agents.

As in *Sibron* the searching officer in the case at bar thrust his hand in Bailey's pocket and took the pocketbook. That item could conceivably have no reasonable relation to the object of the search, that being for a weapon.

Reversed.