Robert COURTNEY *v.* STATE of Arkansas

CR 76-146                    543 S.W. 2d 493

Opinion delivered November 29, 1976
(Division I)

*Ralph E. Wilson Jr.,* for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *B. J. McCoy,* Asst. Atty. Gen., for appellee.

Conley Byrd, Justice. Following the reversal of appellant Robert Courtney's conviction in *Courtney* v. *State,* 252 Ark. 620, 480 S.W. 2d 351 (1972), appellant was again put to trial in Poinsett County. At that trial appellant represented himself with the assistance of Attorney John R. Henry whom the court appointed to help in an advisory capacity. When the jury was unable to agree, the court declared a mistrial. Thereafter, a motion for change of venue was made and granted. When the matter came up for trial in the Osceola District of Mississippi County, a negotiated plea of 25 years suspended sentence was accepted by appellant on May 8, 1973. After appellant was arrested on some charges in Crittenden County, the State moved to revoke the suspended Mississippi County sentence. Appellant was represented at the revocation by Mr. Dana Davis of the law firm of Skillman, Durrett and Davis of West Memphis, Arkansas. The trial court on March 28, 1974, granted the State's motion to revoke and sentenced appellant to 15 years in the Department of Correction. On April 29, 1974, appellant filed a *pro se* "Notice of Appeal and Motion for Appointment of Counsel."

On May 9, 1974, the trial court wrote to appellant the following:

"Robert Courtney 62558
Box 500
Grady, Arkansas 71644

Dear Robert Courtney:

I am mailing your Notice of Appeal to the Circuit Court Clerk at Osceola, Arkansas, for filing.

It will be necessary for you to direct all of your future correspondence in regard to this matter to your attorney, Mr. Dana R. Davis, Skillman, Durrett and Davis, Lawyers, West Memphis, Arkansas, and I am sure he will do whatever is necessary from that point on.

Yours very truly,

Todd Harrison"

On August 6, 1974, Mr. Dana R. Davis of the law firm of Skillman, Durrett and Davis wrote to appellant:

"Dear Mr. Courtney:

I have not been appointed by any State or Federal Court to represent you in your pending appeal and I will not voluntarily represent you further.

Your entire file is enclosed for your inspection or that of any Attorney you might have in the future.

Please do not contact me again.

Yours very truly,

Dana R. Davis"

On August 29, 1974, our Criminal Justice Coordinator wrote to appellant the following:

"Dear Mr. Courtney:

This will acknowledge receipt of your letter dated August 9, 1974, and received by this office on August 15, 1974, in which you inquire as to whether a Notice of Appeal has been received by this Court.

You are advised that we have been notified that your Notice of Appeal has been filed with the Mississippi County Circuit Court but we have no record of any transcript having been filed with this court for purposes of appeal. Of course, the appellate process does take some time to complete. In view of Mr. Davis' letter of August 6, 1974, I would advise that you contact the circuit court authorities for a clarification of whom has been appointed to represent you on appeal.

Trusting this information is of value, I am

Very truly yours,

Steven N. Carlson
Criminal Justice Coordinator"

On October 28, 1975, appellant filed a *pro se* petition for post-conviction relief which was heard by the trial court on February 6 and February 11, 1976. Appellant represented himself at the hearings held on those dates. The record of those hearings shows that the trial court had at some time appointed Dana R. Davis of the law firm of Skillman, Durrett and Davis to represent appellant on his appeal from the March 28, 1974, revocation but the record does not show why the appeal has not been perfected in this court.

The record of the post-conviction hearing also shows that appellant is 41 or 42 years of age and has spent 20 of those years in the State's penal institutions for crimes committed. After the conclusion of the testimony the trial court asked appellant "What action are you asking the court to take here today?" The record then shows the following:

"DEFENDANT: I would ask the Court to set aside the conviction or either reduce the sentence to the lowest

term of grand larceny, and to completely, how do you say it? Set aside the habitual offender on the grounds that I've been placed twice in jeopardy on these charges that's been set aside. They used six convictions, and the only — Four of these convictions were set aside, according to testimony, this lawyer, Mr. Henry, was set aside by the Circuit Court, and the State Court elected not to retry me on that, so therefore I would be innocent of the charges. They could not be used as habitual criminal, and I would ask the Court to set aside the conviction, and would be no reason for a new trial.

Like the Court said: I would have to stay in jail probably, unless a reasonable bond, or maybe I could be released on my own *reconnaissance*, and I could get the proper treatment and go through another trial.
THE COURT: All right. I'll tell you what I am going to do: I am going to deny your petition for relief under Criminal Procedure Rule Number I. I am going to grant your motion for credit for your time in jail and in the penitentiary awaiting trial, and you will be given credit for 19 months jail time on that."

For reversal of the trial court's decree in the post-conviction hearing the appellant contends:

"Appellant was denied his right to appeal from the revocation hearing due to his indigency, and through no fault of his own, but due to some misunderstanding between appellant's retained trial counsel and the circuit judge, which denied him appellate counsel and thus violated his constitutional right of due process of law."

Since the record does not show the status of appellant's appeal from the revocation of his suspended sentence nor why it has not been perfected in this court, we need not speculate as to what relief could have been granted him here had he requested such relief in the trial court. The Criminal Justice Coordinator recognized in August of 1974, that some communication gap existed in connection with the appeal and suggested to appellant that he contact the trial court for a clarification as to who had been appointed to represent him. The record does not show that appellant accepted this advice. In the absence of a showing that the failure to perfect the

appeal was the fault of either the trial court or the conduct of his court appointed attorney, we cannot say that the trial court erred in refusing to set aside his conviction or to reduce it to the lowest term for grand larceny.

Affirmed.

We agree: HARRIS, C.J., and HOLT and ROY, JJ.